UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALVARO HURTADO-GOMEZ,<br><br>                Plaintiff,<br><br>    v.<br><br>ANGENIE McCLEARY; TOM BOWMAN; LAWRENCE SCHOEN; BLAIN COUNTY SHERIFF'S DEPARTMENT; BLAINE COUNTY SHERIFF GENE RAMSEY; BLAINE COUNTY JAIL SERGEANT BEAR[1]; BLAINE COUNTY JAILER KELLY[2]; BLAINE COUNTY JAILER HANSEN[3]; AND BLAINE COUNTY JAILER OJEDA,<br><br>                Defendants. | Case No. 1:12-cv-00606-BLW<br><br>**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER** |

       Pending before the Court in this prisoner civil rights case are Defendants' Motion to Dismiss Pursuant to Rule 12(b) (Dkt. 11), Plaintiff's Motion to Amend Complaint to Add John Does 1-5 (Dkt. 16), and Defendants' Motion to Compel Plaintiff to Respond to Defendants' First Discovery Requests and to Deem Defendants' First Requests for Admissions to Plaintiff Admitted (Dkt. 19).

---

[1] The true identity of "Blaine County Jail Sergeant Bear" is Robert Dachtler.

[2] The true identity of "Blaine County Jailer Kelly" is Kelly White.

[3] The true identity of "Blaine County Jailer Hansen" is Steven Hansen.

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 1**

The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. Accordingly, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

After reviewing the parties' arguments, supporting evidence, and the record in this matter, the Court will deny Defendants' Motion to Dismiss, deny Plaintiff's Motion to Amend, and deny Defendants' Motion to Compel.

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Institution (ISCI). The events relevant to Plaintiff's Complaint occurred while he was incarcerated at the Blaine County Detention Center (BCDC), awaiting relocation to an IDOC facility.

On February 6, 2012, Plaintiff learned that he would be moving from 500 Pod to 300 Pod at the BCDC. (Complaint, Dkt. 3, p. 4.) On that date, Plaintiff was told by BCDC staff that he was no longer a Blaine County inmate, but an IDOC inmate, because he had been sentenced.

Also on that date, Plaintiff alleges that he told BCDC officers Kelly White, Robert Dachtler and Steven Hansen, that his co-defendant was housed in 300 Pod and that this inmate was likely to attack Plaintiff if they were housed in the same place. (*Id*.) Plaintiff asked not to be moved to 300 Pod, but Robert Dachtler ordered Plaintiff moved, and Kelly White and Steven Hansen allegedly did nothing to stop it, even though they were

all aware of the risk that Plaintiff would be attacked by his co-defendant. (*Id*.) Plaintiff filed an inmate request form on February 7, 2012, notifying jail officials of the threat, but they responded only, "Kite us if you have any problems."

On February 9, 2012, Plaintiff was attacked and seriously injured by his co-defendant and two other inmates in 300 Pod. (*Id*. at 4-5.) He was taken to the hospital for treatment. (*Id*. at 5.)

Plaintiff is a Mexican national and Spanish speaker, who states that he does not speak English. (Dkt. 16.) He does not read or write English. (*See* Dkt. 12, p. 3.) He asserts that he *did* know how to use the grievance system, and filed two formal grievances before he was informed that his custody status had changed: on September 13, 2011, he filed a grievance, complaining of an infection on his legs and feet that was not cured by the antifungal cream he was given (Dkt. 11-2 ,pp. 14-15); and on October 5, 2011, Plaintiff filed a grievance, complaining that he needed additional medical attention for his rash. (Dkt. 11-2, p. 13.) Plaintiff filed informal inmate request forms to remedy many different issues both before and after his custody status change. (*See, e.g.*, Dkt. 18-2.)

According to the BCDC grievance policy, Plaintiff had ten days to file a grievance after the assault incident of February 9, making the deadline on February 19, 2012. Plaintiff was transferred to an IDOC facility on February 24, 2012. Between February 11, 2012 and February 22, 2012, Plaintiff filed five inmate request forms about miscellaneous needs he had, but no grievances.

Plaintiff alleges that, a day after the assault, on February 10, 2012:

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 3**

> I asked for a grievance form, I was told that, I was a [sic] IDOC inmate and that I would have to file it there. I don't recall who the deputy was, due to the fact that I was on medication and I was still in sort of a daze from the beating, that I received in 300 pod by my co-defendants.

(Second Plaintiff Decl., Dkt. 17, p. 2.)

He further alleges, that, two days after the assault, on February 12, 2012:

> I was transported to the dentist, because of the beating, and on the way I asked the Deputy if he would get a me a grievance form when we got back. He told me that he would. After we got back I once again reminded him, and again he told me he would. The next time I seen him I asked him about it he told me that he was informed to tell me that I was to file it at IDOC. I asked him if he was sure and he said "that's what I was told."

(*Id.*)

Jay Davis, BCDC Jail Administrator and Grievance Coordinator, declares: "I personally never denied [Plaintiff] a grievance form. I also interviewed all of my Deputies and confirmed that no one told [Plaintiff] that he needed to wait until he reached IDOC to file a grievance." (Second Davis Decl., Dkt. 14, p. 6.) Further, Davis declares: "All deputies are trained that if an inmate requests a grievance form the deputy is required to give them one." (*Id.*)

To show that it was not impossible to file a grievance in the BCDC even though a prisoner was considered in "State custody" after sentencing, Defendants have provided instances of three other inmates who were able to file grievances that received responses while they were IDOC inmates housed in the BCDC. (Davis Second Decl., Dkt 14, pp. 6-8.) The grievances concerned why over-the-counter Naproxen and cough drops were not paid for by the State now that the prisoner was in "State custody," BCDC censorship of

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 4**

incoming mail, and personal property BCDC staff removed during a cell search.

The BCDC does not allow grievances to be filed after an inmate has been transferred to a new facility. The BCDC policy states: "Inmates who have a pending grievance at the time of release lose all standing with respect to any further internal administrative remedy of the matter under consideration." (Dkt. 14-1, p. 4.)

Plaintiff alleges that, after his transfer, he requested a grievance form at the IDOC on February 24, 2012, but was told he would be moved to the RDU, and could file one there. On February 28, 2012, he was moved, and he requested a grievance form. He alleges that he filed a grievance about the Blaine County incident, by placing a grievance in the ISCI grievance box, on March 1, 2012. He alleges that he did not ever receive a response to that grievance. (Plaintiff Dec., Dkt. 12-2, p. 2.)

On December 10, 2012, Plaintiff filed his Complaint wherein he alleged that Defendants failed to protect him from inmate-on-inmate violence in violation of the Eighth Amendment. Plaintiff also alleged that Defendants failed to provide him with adequate medical care. The Court initially reviewed the Complaint pursuant to 28 U.S.C. § 1915A, and on March 15, 2013, entered an Order permitting Plaintiff to proceed on his Eighth Amendment failure to protect claim.

On May 9, 2013, Defendants filed the Motion to Dismiss Pursuant to Rule 12(b) that is now under consideration. (Dkt. 11.) Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim. (*Id*. at 7.) Specifically, Defendants argue that Plaintiff never filed a formal Inmate Grievance

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 5**

Form regarding the February 2012 assault. (*Id*. at 9.) In response, Plaintiff contends that the exhaustion process was rendered unavailable to him because he was told by jail officials that he could not file a grievance and was denied a grievance form. (Dkt. 12-2, p. 2.)

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**1.      Standard of Law**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to exhaust all of his administrative remedies within the prison or jail system before he can include the claim in a new or ongoing civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, – F.3d –, 2014 WL 114684 (9th Cir. 2014) (exhaustion of a claim may occur prior to filing suit or during the suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for lack of exhaustion, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused where the prison improperly screened or processed an inmate's grievance, *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010); prison officials misinformed an inmate regarding grievance procedures, even if innocently done, *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); or "jail staff affirmatively interfered with his ability to exhaust administrative remedies." *Albino*, 697 F.3d at 1033.

Administrative remedies are also considered "unavailable" where "remedies were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. It is not

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 7**

enough that the prisoner was subjectively unaware of proper grievance procedures. He must also show that "his unawareness was objectively reasonable" – that he "could not have discovered the grievance procedure with reasonable effort." *Id.* at 1038 ("Albino fails to dispute that the Custody Division Manual described the grievance procedure in § 5–12/010.00, that jail policies required every housing unit to have an adequate supply of Inmate Complaint Forms, or that locked grievance repositories existed in each housing unit"). In addition, "a good faith effort on the part of inmates to exhaust a prison's administrative remedies [is] a prerequisite to finding remedies effectively unavailable." *Id*. at 1035.

 2.     **Blaine County Detention Center's Grievance Procedure**

The BCDC grievance procedure is an internal administrative means for resolving complaints and identifying potentially problematic management areas. (Davis Decl. And Exhibits Dkt. 11-2, pp. 2-3). It consists of informal grievances, formal grievances, and appeals. (*Id*. at 3-4.) The grievance procedure identifies informal communications between inmates and staff as informal grievances. (*Id*. at 2.) If the inmate's concern is not resolved informally and the inmate wishes to continue with the grievance process, he must file a formal grievance. (*Id*.)

An inmate may file a formal grievance regarding treatment, administrative procedures, policies, incidents, medical care, disciplinary actions, or other legitimate concerns. (*Id*. at 3.) When filing a formal grievance, inmates must include: (1) the specific nature of the complaint(s) including the date, time, and location of the incident(s); (2) the

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 8**

date the grievance is being filed; and (3) the signature of the inmate. (*Id*.) A formal grievance must be filed no later than ten (10) days from the date on which the basis for the complaint occurred. (*Id*.)

Upon receiving the completed Inmate Grievance Form, the Deputy will forward it immediately to the Shift Supervisor. (*Id*.) The Shift Supervisor will review the grievance and if immediate action needs to be taken, will contact the Administrator for direction. If immediate action is not required the Shift Supervisor will forward it to the Administrator or his designee.

The Administrator or his designee shall, within five (5) days: (1) investigate and review the inmate's complaint; (2) ensure that corrective action is taken if the inmate's complaint is valid; (3) inform the inmate in writing of his findings and what, if any, action will be taken and when; and (4) inform the inmate in writing if the grievance is invalid and provide them the reason why. (*Id*.)

The Administrator will review the designee's administrative response to ensure that the grievance has been addressed and responded to appropriately. (*Id*.) The Administrator will return the form to the designee in a timely manner so that the response can be given to the inmate within seven (7) working days. (*Id*.) When the inmate's grievance is of a confidential or sensitive nature, the response will be sealed in an envelope and delivered personally to the inmate. (*Id*.)

Inmates dissatisfied with the grievance response may file an appeal to the Administrator within ten (10) working days of the response. (*Id*. at 4.) The appeal must be

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 9**

written on an inmate request form, with a copy of the original grievance attached, and must state the specific reasons for the appeal. (*Id*.) The Chief Deputy or Sheriff will review the inmate's grievance and the response provided. (*Id*.) If the response is appropriate, he will indicate that no further action is required, sign and date the grievance, and forward it to the Administrator. (*Id*.) If the response is inappropriate or inadequate, the Chief Deputy or Sheriff will attach comments and return it to the Administrator for further action. (*Id*.) A written response to the appeal will be given to the inmate within five (5) working days from the date the appeal was received. (*Id*.) The grievance process is not exhausted until the inmate's grievance appeal has been filed. (*Id*.)

**3.     Discussion**

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim. To meet their initial burden, Defendants rely upon the Declaration of Jay Davis, BCDC Jail Administrator and Grievance Coordinator. (Dkt. 11-2.) Davis states that while Plaintiff was incarcerated at the Blaine County Detention Center from July 15, 2011 through February 24, 2012, Plaintiff filed only two Inmate Grievance Forms. (*Id*. at 5-6.) The two formal grievances concerned claims of improper medical care and medication. (*Id*.) Davis states that Plaintiff never filed a formal inmate grievance regarding any of the allegations in this lawsuit related to the February 2012 inmate-on-inmate assault. (*Id*. at 6.) In addition, the record is clear that no final-level appeal of a grievance was filed. Accordingly, Defendants have met their initial burden to show that Plaintiff did not exhaust his administrative remedies.

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER  - 10**

The burden then shifts to Plaintiff to show that administrative remedies or instructions for their use were so confusing or contradictory that they were essentially unavailable, or that jail employees misled him into believing that jail remedies were unavailable. Plaintiff argues that the grievance process was "unavailable" to him for the following reasons.

On or about January 31, 2012, Plaintiff was sentenced to a term of imprisonment in the Idaho State Department of Correction. It is undisputed that, as a result of his change in status from a pretrial detainee to a sentenced felon, he was moved to a different pod and was told that he was now an IDOC inmate, rather than a BCDC inmate, even though he was still incarcerated at BCDC.

Plaintiff alleges that, after the assault and prior to his transfer, he requested a grievance form twice, but was told by deputies that, because he was sentenced to the IDOC, any grievance would have to be filed in the IDOC. (Dkts. 12, pp. 2-3; 17, p. 2.) Plaintiff is adamant that two deputies told him that he could not file a grievance about the assault because he was an IDOC inmate. He declares, "I'm sure that if I saw them I could identify them, I just don't know their names," and he seeks to include them as defendants in this lawsuit for their alleged wrongdoing. (Sec. Plaintiff Decl., p. 2.)

Plaintiff was transferred to the IDOC on or about February 24, 2012. (Dkt. 12, p. 2.) Plaintiff alleges that he filed a grievance when he reached the IDOC, but that he never received a response. (*Id*. at 3.)

Defendants argue that this series of events is highly unlikely, based on Jay Davis's

**MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER - 11**

declaration that the grievance policy is always available to inmates who are awaiting transfer to state prison, and that most of the grievances in the jail are filed by IDOC inmates awaiting transfer. (Dkt. 13, p. 4; Dkt. 14, p. 6.) Davis also declares that he never denied Plaintiff a grievance form and that he interviewed all his deputies and confirmed that no one told Plaintiff that he needed to wait until he reached IDOC to file a grievance. (*Id.* at 4-5.)

These responses to Plaintiff's allegations are merely general, and are not supported by the testimony of any jail deputy who was actually involved in the situations Plaintiff describes. For example, jail records would indicate who had interactions with Plaintiff in his new cell when he was moved after the assault, and who would have accompanied him to the dentist, and yet Defendants have not come forward with specific facts to rebut Plaintiff's particular version of events.

Similarly, Defendants have not shown that Plaintiff had interactions with other inmates who told him that they had filed BCDC grievances, regardless of their status as IDOC inmates. As to substance, at least one of the sample grievances provided by Defendants shows that, for some purposes, whether an inmate was a BCDC pretrial detainee or a sentenced IDOC inmate awaiting transfer made a difference in how that inmate was to be provided with medical care. This fact, and the fact that jailors moved him to a new area of the jail and made it a point to tell Plaintiff that he was now an IDOC inmate as of his sentencing date, show that the BCDC or IDOC distinction *did* matter in some circumstances, which could lead to confusion about which custodian should receive

MEMORANDUM DECISION AND ORDER AND SCHEDULING ORDER  - 12

a grievance.

Plaintiff also alleges that he, in fact, filed a grievance with IDOC to complain of the assault, but he never received an answer. He asserts that he does not have a copy of the grievance he filed because the IDOC form is not a duplicate, but rather a single piece of paper. He further submits evidence from a prisoner class action lawsuit showing an ongoing issue regarding whether the grievance delivery system at ISCI works in a dependable fashion. Defendants have provided no controverting evidence from IDOC officials showing whether they received the grievance about BCDC.

The Court finds that Plaintiff has met his burden to show unavailability of administrative remedies in light of the confusing dual nature of his custody, communicated directly to him; the direction for him to wait to grieve the assault incident until after he was transferred to the IDOC that is uncontroverted by testimony from the specific deputies who had Plaintiff in their care; and Plaintiff's allegation that he placed his grievance form in the IDOC grievance box for resolution as he had been advised, another fact that is uncontroverted by the evidence. Plaintiff's newness to the IDOC system, his declarations that he followed BCDC and IDOC employee instructions on how to submit a grievance, and his limited ability to understand English also weigh in the balance on Plaintiff's side.

Accordingly, the Motion to Dismiss will be denied, and the Court will enter a pretrial scheduling order.

## MOTION TO AMEND COMPLAINT TO ADD JOHN DOES 1-5

Plaintiff seeks leave to amend his Complaint. The Court will deny Plaintiff's motion. Plaintiff alleges in his briefing that John Does 1-5 interfered with his ability to file a formal grievance concerning the allegations in this lawsuit related to the February 2012 inmate-on-inmate assault. While such allegations are relevant to the PLRA's exhaustion requirement, they alone do not create a separate cause of action.

Inmates have no constitutional entitlement to a specific grievance procedure. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Therefore, since Plaintiff has not demonstrated how John Does 1-5 violated his Eighth Amendment rights or any other established rights, Plaintiff's Motion to Amend will be denied. To the extent that Plaintiff alleges that the Court should permit him to add Defendant Ojeda, who allegedly directed that Plaintiff be placed in the pod where he was attacked, he has stated insufficient facts to support a claim. However, Plaintiff may seek to add Ojeda at a later date if he obtains facts in discovery that would support such a claim.

## DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO RESPOND TO DEFENDANTS' FIRST DISCOVERY REQUESTS AND TO DEEM DEFENDANTS' FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF ADMITTED

The Court will deny Defendants' Motion to Compel Plaintiff to respond to their discovery requests and to deem their requests for admissions admitted. The Court's Initial Review Order provided the following:

> If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12, disclosures and discovery shall be automatically stayed with the exception that Defendants shall submit with any motion to dismiss for failure to exhaust administrative remedies a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or otherwise relate to the subject matter of a claim.

(Dkt. 6, pp. 9-10.) Accordingly, all discovery was stayed upon Defendants' filing of their Motion to Dismiss Pursuant to Rule 12(b).

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss Pursuant to Rule 12(b) (Dkt. 11) is DENIED.

2. Plaintiff's Motion to Amend Complaint to Add John Does 1-5 as Established in the Sur-Reply of the Plaintiff (Dkt. 16) is DENIED.

3. Defendants' Motion to Compel Plaintiff to Respond to Defendants' First Discovery Requests and to Deem Defendants' First Requests for Admissions to Plaintiff Admitted (Dkt. 19) is DENIED.

**IT IS FURTHER ORDERED:**

1. **<u>Disclosure of Relevant Information and Documents:</u>** If the parties have not already done so, no later than 30 days after entry of this Order, the parties shall provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject

of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to be filed ex parte under seal, and not provided by email or mail.

2. **Amendment of Complaint**. Any proposed amended complaints, with accompanying motions, must be filed no later than **120 days** after entry of this Order.

3. **Completion of Discovery and Requests for Subpoenas:** All discovery shall be completed no later than **180 days** after entry of this Order. Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date. Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made within **150 days** afer entry of this Order. No requests for subpoenas duces tecum will be entertained after that

date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is se for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

4. **Depositions**: Depositions, if any, shall be completed no later than **150 days after entry of this Order**. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by **10 days'** written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff must file a motion requesting permission to do so, specifically

showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

5. **Dispositive Motions:** All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs no later than **210 days after entry of this Order**. Responsive briefs to such motions shall be filed within **30 days** after service of motions. Reply briefs, if any, shall be filed within **14 days** after service of responses. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho**. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**

6. **Alternative Dispute Resolution (ADR)**. Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference, and the case will be referred to the ADR Director for scheduling.

DATED: **March 12, 2014**



_B. Lynn Winmill (signature)_
Honorable B. Lynn Winmill
Chief U. S. District Judge